FILED
Nov 26  3 32 AM '03
U.S. ...
NEW HAVEN, CONN.

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BODYCOTE (SOUTHWEST), INC., a Texas corporation, | ) CIVIL ACTION<br>)<br>) |
| Plaintiff and Counterdefendant, | )<br>) |
|  | ) CASE NO. 3:01 CV 1985<br>) |
| UNITED DOMINION INDUSTRIES, INC., a Delaware corporation, d/b/a Fenn Manufacturing Company, | ) AT NEW HAVEN<br>)<br>)<br>) |
| Defendant and Counterplaintiff. | ) NOVEMBER 25, 2003 |

## AMENDED COUNTERCLAIM OF UNITED DOMINION INDUSTRIES, INC.

Defendant and Counterplaintiff United Dominion Industries, Inc., d/b/a Fenn Manufacturing Company ("Fenn"), by its attorneys, for its amended counterclaim against Plaintiff and Counterdefendant Bodycote (Southwest), Inc. ("Bodycote"), alleges as follows:

### NATURE OF THE COUNTERCLAIM

1. Fenn brings this counterclaim to recover the substantial damages it has suffered as a result of Bodycote's false representations, violation of the Connecticut

Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b ("CUTPA"), and breach of contract. As further described below, in 1999 and 2000 Fenn contracted with Bodycote to heat treat military helicopter components that Fenn was manufacturing for Boeing. Bodycote, which holds itself out as a "premier source at commercial thermal processing," agreed to heat treat those components in accordance with a Boeing specification governing heat treatment. Bodycote heat treated the parts and provided Fenn with certifications attesting that Bodycote had performed the heat treatment in accordance with Boeing's specification. Fenn relied upon Bodycote's representations, accepted the parts, and delivered a substantial number of those components to Boeing for use on its military helicopters.

2. Fenn and Boeing later discovered, however, that Bodycote's representations that it had heat treated the components in accordance with Boeing's specification were false. Fenn suffered significant damages as a result of Bodycote's wrongful conduct, including substantial expenses to manufacture replacement components for Boeing free of charge.

3. Fenn informed Bodycote of the substantial damages that Fenn had suffered because of Bodycote's conduct. Bodycote, however, refused to compensate Fenn for the damages Bodycote had caused. Instead, Bodycote claimed that it was not required

to answer for the harm it caused Fenn because, according to Bodycote, it was protected by certain boilerplate limitation of liability language included in forms used by Bodycote and its predecessor. Bodycote asserted that the limitation of liability language applied to the swash plates that Bodycote heat treated for Fenn in 1999 and 2000, and that the language limited Bodycote's liability to Fenn to a small fraction of Fenn's damages. Fenn strongly disagreed that any such limitation of liability language was part of the parties' contract, or that it applied to Bodycote's conduct here. Bodycote thereafter filed this action, purporting to seek a declaratory judgment limiting its liability.

    4.    Fenn is entitled to recover the full amount of the damages it suffered as a result of Bodycote's wrongful conduct. The purported limitation of liability that Bodycote relies upon was not part of the parties' contract for heat treating and, even if it were, would not operate to limit Bodycote's liability for its recklessness, gross negligence, violation of CUTPA, and breach of contract in this case.

## COMMON ALLEGATIONS

    5.    Fenn manufactures, among other things, critical, close-tolerance machined parts for military and commercial aircraft. For example, Fenn manufactures a number of parts for The Boeing Company ("Boeing") for use in Boeing's CH-47 Chinook twin-rotor helicopter. Boeing manufactures CH-47 helicopters for the United States Army,

the Army Reserve, the National Guard, and several international customers. CH-47 helicopters, which can carry a 25,000 pound useful load, primarily are used to transport troops and equipment. CH-47 helicopters played a central role in the U.S. Army's operations in the Persian Gulf War, and are in operation today in Afghanistan.

    6. One of the components that Fenn manufactures for the CH-47 is known as a "swash plate." Swash plates are installed underneath each rotor on the CH-47, and form part of the rotor-tilting mechanism. Swash plates, as well as other components that Fenn manufactures for the CH-47, are "flight safety parts," meaning that their integrity is critical to the safety of the helicopter and its occupants. Fenn manufactures the swash plates for Boeing by purchasing SAE 4340 steel alloy forgings from a Boeing-approved supplier and precision-machining the forgings to the precise shape and size required by Boeing.

    7. Boeing requires that Fenn manufacture the swash plates in accordance with stringent Department of Defense and Boeing specifications. One of Boeing's requirements is that swash plates (and other components) for the CH-47 be heat treated in accordance with Boeing specification BAC 5617. Boeing requires that swash plates and other components for the CH-47 be heat treated to ensure that the components possess sufficient hardness and corrosion-resistance to operate under the extreme stresses

that are placed on those components. BAC 5617 provides the processes that must be followed to properly heat treat components and thereby achieve the levels of hardness and corrosion resistance required by Boeing and its military customers.

        8.      In the fall of 1999, Fenn received an order from Boeing for a quantity of swash plates for the CH-47. Because Fenn does not have the capability to heat treat swash plates at Fenn's manufacturing facility in Newington, it was necessary for Fenn to contract with an outside vendor to heat treat the swash plates in accordance with BAC 5617.

        9.      Boeing's specifications required that the swash plates manufactured by Fenn be heat treated by a Boeing-approved vendor. At that time, Bodycote's Forth Worth, Texas facility was the only vendor approved by Boeing to heat treat swash plates for the CH-47.

       10.     Fenn contacted Bodycote and requested a quotation for heat treating swash plates for the CH-47. Bodycote provided a quotation by facsimile (a copy of the quotation is attached as Exhibit 1).

       11.     Beginning in November 1999, Fenn transmitted to Bodycote a series of Fenn purchase orders for heat treatment of 36 swash plates. (Copies of those purchase orders are attached as Exhibit 2.) With those purchase orders, Fenn offered to purchase

heat treating services from Bodycote on specified terms and conditions, including that: (a) Bodycote would heat treat each and every swash plate in accordance with Boeing specification BAC 5617; (b) Bodycote would provide Fenn with written certifications that the swash plates had been heat treated in accordance with Boeing specification BAC 5617; and (c) Fenn's standard terms and conditions would apply.

12. Each purchase order instructed Bodycote to contact Fenn's purchasing department if Bodycote required a copy of Fenn's standard terms and conditions.

13. At that time, Fenn's standard terms and conditions provided: "Seller warrants that all articles, materials, work and services furnished hereunder will be free from defects in material and workmanship, [and] will conform to applicable specifications, drawings, samples and descriptions . . . ." (Fenn's standard terms and conditions are attached as Exhibit 3.)

14. Bodycote accepted the Fenn purchase orders, including the terms and conditions described above, by heat treating the swash plates and delivering the swash plates and certifications to Fenn.

15. Beginning in November 1999, Bodycote provided Fenn with a series of "Certified Test Reports." (The Certified Test Reports are attached as Exhibit 4.)

16. Each Certified Test Report identified the swash plates by serial number, and represented: "Bodycote (Southwest), Inc. certifies that the parts listed above have been treated in accordance with the above listed specifications, and that the above statements are true." Each Certified Test Report identifies Boeing specification BAC 5617. Bodycote transmitted each Certified Test Report to Fenn at or about the same time that Bodycote delivered the swash plates identified in the report.

17. In reasonable reliance upon Bodycote's representations in the Certified Test Reports, Fenn accepted the swash plates and delivered a substantial portion of those swash plates to Boeing.

18. Fenn and Boeing later discovered, however, that Bodycote's certifications that it had treated all of the swash plates in accordance with Boeing specification BAC 5617 were false. In contrast to what it represented to Fenn, Bodycote had heat treated most, if not all, of the swash plates for substantially less time than Boeing's specification required. The result was that the swash plates did not possess the hardness characteristics required by Boeing. Boeing ultimately rejected a substantial portion of the swash plates it received from Fenn. The remainder of the swash plates that were not properly heat treated were not delivered to Boeing.

19. Boeing demanded that Fenn replace the rejected swash plates at no cost to Boeing. Fenn agreed to do so, and incurred substantial costs manufacturing replacement swash plates.

20. Fenn advised Bodycote of the significant damages Fenn had suffered because of Bodycote's actions, and requested that Bodycote compensate Fenn. Bodycote refused, claiming that its liability to Fenn was limited to approximately $28,000 under "limitation of liability" language contained on certain Bodycote forms that Bodycote claimed were part of the parties' contract.

21. To date, Bodycote has refused to compensate Fenn for the substantial damages that Fenn has incurred because of Bodycote's wrongful conduct.

## COUNT I – NEGLIGENT MISREPRESENTATION

22. Fenn realleges the allegations in Paragraphs 1 through 21 as though fully set forth herein.

23. During 1999 and 2000, Bodycote represented to Fenn that Bodycote had heat treated the swash plates for Fenn in accordance with Boeing specification BAC 5617

24. Bodycote's representations were false because Bodycote did not heat treat the swash plates for the period of time required by Boeing specification BAC 5617.

25. At the time it made those representations, Bodycote should have known that those representations were not true. Among other things, as an expert in heat treating – and specifically, an expert at heat treating in accordance with BAC 5617 – Bodycote should have known that it was not heat treating the swash plates for the period of time required by the specification. Moreover, even after Bodycote was informed in early 2000 that certain swash plates that had been delivered to Fenn did not possess sufficient hardness, Bodycote continued to heat treat the swash plates for an insufficient period of time, and continued to falsely certify to Fenn that the heat treating was being performed in accordance with Boeing specification BAC 5617.

26. Fenn relied upon Bodycote's representations, accepted the swash plates from Bodycote, and delivered a substantial portion of those swash plates to Boeing.

27. Fenn's reliance on Bodycote's representations was reasonable. Bodycote is part of Bodycote International, PLC, which operates over 240 plants in 19 countries. Bodycote holds itself out to the public as a premier source of thermal processing, including heat treatment.

-9-

28.     Fenn suffered substantial damages as a result of Bodycote's reckless and grossly negligent misrepresentations.

## COUNT II – VIOLATION OF CONNNECTICUT UNFAIR TRADE PRACTICES ACT

29.     Fenn realleges the allegations of Paragraphs 1 through 21 as though fully set forth herein.

30.     Bodycote violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, by engaging in unfair and deceptive acts and practices. Among other things, during 1999 and 2000 Bodycote represented to Fenn that Bodycote had heat treated the swash plates for Fenn in accordance with Boeing specification BAC 5617. Bodycote's representations were false because Bodycote did not heat treat the swash plates for the period of time required by Boeing specification BAC 5617.

31.     Fenn suffered substantial damages as a result of Bodycote's violations of the Connecticut Unfair Trade Practices Act.

## COUNT III – BREACH OF CONTRACT

32. Fenn realleges the allegations in Paragraphs 1 through 21 as though fully set forth herein.

33. Fenn and Bodycote entered into a series of contracts embodied by Fenn's purchase orders, including Fenn's standard terms and conditions.

34. Under those contracts, Bodycote agreed to heat treat swash plates for Fenn in accordance with Boeing specification BAC 5617. Bodycote also warranted that its heat treating services would be free from defects in workmanship and would conform with applicable specifications.

35. Bodycote breached those contracts and warranties by failing to heat treat swash plates for Fenn in accordance with Boeing specification BAC 5617.

36. Fenn has suffered substantial damages as a result of Bodycote's breach of the purchase order contracts and warranties.

## PRAYER FOR RELIEF

WHEREFORE, United Dominion Industries, Inc., d/b/a Fenn Manufacturing Company ("Fenn"), respectfully requests that the Court enter a judgment ruling in favor of Fenn and against Bodycote (Southwest), Inc. ("Bodycote") on Bodycote's Complaint and Fenn's Counterclaim, awarding damages to Fenn in an amount to be determined at trial, awarding attorneys' fees and costs under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110g, and awarding Fenn such other and further relief as the Court deems just and appropriate.

Dated: November 25, 2003

UNITED DOMINION INDUSTRIES, INC.

By: _____
One of its attorneys

Ross B. Bricker, Esq.
Federal Bar No. CT23742
David C. Layden, Esq.
Federal Bar No. CT23743
JENNER & BLOCK, LLC
One IBM Plaza
Chicago, Illinois 60611
Tel:    (312) 923-2796
Fax:    (312) 840-7796

Michael D. O'Connell, Esq.
Federal Bar No. CT05299
Diane C. Mokriski, Esq.
Federal Bar No. CT21114
O'CONNELL, FLAHERTY &
ATTMORE
280 Trumbull Street
Hartford, Connecticut 06103-3598
Tel:    (860) 548-1300
Fax:    (860) 548-0023

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via 1st class mail on this 25th day of November, 2003, to the following counsel of record:

William J. Melley, III
Kenny, Brimmer, Melley & Mahoney
5 Grand Street
Hartford, CT  06106-1505


Randall G. Vaughan
Pray, Walker, Jackman, Williamson & Marlar
900 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma  74103-4218

_____
Michael D. O'Connell, Esq.